UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ROBERT MCKINNON, III,

        Petitioner,

v.                                  Case No. 1:14cv227/WS/CJK

JULIE L. JONES,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a second amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. 35). Respondent filed an answer, submitting relevant portions of the state court record. (Docs. 44, 51). Petitioner replied. (Doc. 58). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the court

show that petitioner is not entitled to federal habeas relief, and that the second amended petition should be denied.[1]

## BACKGROUND AND PROCEDURAL HISTORY

On May 13, 2010, petitioner was charged in Alachua County Circuit Court Case No. 10-CF-001293, with robbery with a firearm (Count I), aggravated assault with a firearm (Count II) and battery (Count III).  (Doc. 51, Ex. A, pp. 6-7).[2]  The information was amended on July 15, 2010, to charge robbery with a firearm (Count I), aggravated battery with a firearm (Count II) and possession of a firearm by a convicted felon (Count III).  (Ex. A, pp. 54-55).  Petitioner waived his right to a jury trial (Ex. A, p. 252), and the case proceeded to trial before the Honorable Robert K.

---

[1]The undersigned is aware that petitioner's appeal from the district court's order denying his motion for bond/release on his own recognizance is pending in the Eleventh Circuit.  The order falls within the collateral order doctrine and is immediately appealable.  *See Pagan v. United States*, 353 F.3d 1343, 1345-46 (11th Cir. 2003) (holding that a district court's bond order in a collateral proceeding is immediately appealable).  As a general matter, the filing of a notice of appeal deprives the district court of jurisdiction over all issues involved in the appeal.  *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1982); *Doe v. Bush*, 261 F.3d 1037, 1064 (11th Cir. 2001) ("[A]s a general rule, the filing of a notice of appeal divests the district court of jurisdiction over those aspects of the case that are the subject of the appeal.").  The pending appeal in this case, however, does not deprive this court of jurisdiction to determine the merits of the second amended habeas petition, because the issue on appeal is collateral to the merits of the petition.  *See Mahone v. Ray*, 326 F.3d.1176, 1179 (11th Cir. 2003) (a pending appeal does not prevent the district court from entertaining motions on matters collateral to those at issue on appeal); *Bush*, *supra*.  Further, the disposition of petitioner's appeal will not render the second amended habeas petition moot, or affect the disposition of any particular claim.

[2]All references to exhibits are to those provided at Doc. 51 unless otherwise noted.  If a cited page has more than one page number, the court cites to the page number appearing at the bottom center of the page.

Groeb.  (Ex. B).  Judge Groeb found petitioner guilty as charged.  (Ex. A, pp. 265-267; Ex. B, pp. 519-520).  Petitioner was adjudicated guilty and sentenced to 25 years imprisonment with a 10-year mandatory minimum on Count I; a concurrent 15-year term of imprisonment with a 3-year mandatory minimum on Count II; and a concurrent 5-year term of imprisonment with a 3-year mandatory minimum on Count III.  (Ex. A, pp. 268-76 (judgment and sentence); Ex. B, pp. 539-540 (sentencing transcript)).  The Florida First District Court of Appeal (First DCA) affirmed the judgment on December 17, 2012, per curiam and without a written opinion.  *McKinnon v. State*, 107 So. 3d 410 (Fla. 1st DCA 2012) (Table) (copy at Ex. E).  Petitioner sought review in the Florida Supreme Court.  (Ex. I).  The Florida Supreme Court dismissed the petition for lack of jurisdiction.  *McKinnon v. State*, 115 So. 3d 1001 (Fla. 2013) (Table) (copy at Ex. K).

On February 22, 2013, petitioner filed a state habeas petition alleging ineffective assistance of appellate counsel.  (Ex. L).  The First DCA denied the petition on the merits on May 22, 2013.  *McKinnon v. State*, 113 So. 3d 1027 (Fla. 1st DCA 2013) (copy at Ex. M).

On July 30, 2013, petitioner filed a motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a).  (Ex. N).  The state circuit court denied the motion.  (Ex. O).  The First DCA affirmed on June 23, 2014, per curiam and

without a written opinion.  *McKinnon v. State*, 145 So. 3d 835 (Fla. 1st DCA 2014)

(Table) (copy at Ex. R).  The mandate issued August 28, 2014.  (Ex. T).

On November 8, 2013, petitioner filed a motion for postconviction relief under

Florida Rule of Criminal Procedure 3.850.  (Ex. U).  The state circuit court denied

relief without an evidentiary hearing.  (Ex. V).  Petitioner appealed the trial court's

order to the First DCA, and notified the court that he would not be filing an initial

brief.  (Ex. W).  The First DCA affirmed on November 5, 2014, per curiam and

without a written opinion.  *McKinnon v. State*, 151 So. 3d 1237 (Fla. 1st DCA 2014)

(Table) (copy at Ex. X).  The mandate issued December 2, 2014.  (Ex. Y).

On June 27, 2014, petitioner filed another motion to correct illegal sentence

under Fla. R. Crim. P. 3.800(a).  (Ex. Z).  The state circuit court denied the motion.

(Ex. AA).  The First DCA affirmed on November 14, 2014, per curiam and without

a written opinion.  *McKinnon v. State*, 152 So. 3d 570 (Fla. 1st DCA 2014) (Table)

(copy at Ex. EE).  The mandate issued December 10, 2014.  (Ex. FF).

Petitioner filed his original federal habeas petition on November 12, 2014 (doc.

1), which he twice amended (docs. 6, 35).  Petitioner's second amended petition

raises six claims.  (Doc. 35).  Respondent asserts that each of petitioner's claims fails

for one or more of the following reasons:  (1) the claim fails to state a federal claim

cognizable on habeas review; (2) the claim is procedurally defaulted; (3) the state

courts' rejection of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law, and did not involve an unreasonable determination of the facts.  (Doc. 44).

## LEGAL STANDARDS

### Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[3] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner

_____

[3]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B) (i)  there is an absence of available State corrective process; or

(ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

"must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) ("Where a return to state court would be futile – because the petitioner's claims would clearly be barred by state procedural rules – a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." (*quoting Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998))); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice.  *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*,

499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*citing Murray v. Carrier*, 477

U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  The miscarriage of justice

exception requires the petitioner to show that "a constitutional violation has probably

resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S.

298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite

probability, the petitioner must show that it is more likely than not that no reasonable

juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of
> an innocent person is extremely rare.  To be credible, such a claim
> requires [a] petitioner to support his allegations of constitutional error
> with new reliable evidence – whether it be exculpatory scientific
> evidence, trustworthy eyewitness accounts, or critical physical evidence
> – that was not presented at trial.

*Id.*

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody

pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death

Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19.

Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits in
> State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must

independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  The United States Supreme Court emphasized recently:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, supra, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on

an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*,  633 F.3d 1272, 1292 (11th Cir. 2011).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").   Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't*

*of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

## DISCUSSION

Ground One        "Prosecutorial Misconduct And Vindictive Prosecution." (Doc. 35, p. 5).

Petitioner supports this claim with the following allegations:

> Prosecutor George Wright provided Gainesville Police Department (GPD) detective with exhausted arrest warrant number 01-

> 2009-CF-001293-A, which belonged to mental health patient already in custody within Alachua County Jail named Gregory Bernard Epps. Mr. Epps' exhausted arrest warrant was manipulated then used by GPD detectives in order to have Petitioner arrested in Pembrooke, Georgia May 19, 2010, then extradited into their jurisdiction.
>
> Petitioner signed his waiver of extradition May 20, 2010 in order to be transported to Alachua County, Florida with hopes of being exonerated. On June 1, 2010 Petitioner arrived at Alachua County Jail and began fighting against a very high level of widespread public corruption, prosecutor Wright countered Petitioner's efforts by filing se[n]tencing enhancements against Petitioner as 10/20/life offender. Prosecutor Wright then amended information against Petitioner with harsher felony charges. Mr. Wright then had Mr. Epps released from the Alachua County Jail on or about August 6, 2010 in order to cover up his misconduct. Prosecutor Wright then attempted to have Petitioner's DNA illegally obtained while he was within Alachua County Jail in order to strengthen the case and seal Petitioner's fate.

(Doc. 35, p. 6). Petitioner asserts that he presented this claim to the state courts in his direct appeal. (*Id.*, p. 5). Petitioner references Ground Five of his direct appeal, and Ground Four of his postconviction motion. (*Id.*, p. 6).

Respondent asserts that although petitioner presented this claim to the state court in his direct appeal, the claim provides no basis for federal habeas relief because it does not present an issue of federal law. (Doc. 44, pp. 19-20). Respondent contends that petitioner's reference to the claim raised in his postconviction motion is inapposite, as the claim petitioner presented to the state courts as Ground Four of his postconviction motion was one of ineffective assistance of counsel for failing to

expose the State's intentional fraud upon the court and for failing to demand authentication of evidence.  Petitioner's present claim is not one of ineffective assistance of counsel.  (Doc. 44, pp. 19, 20).  Petitioner's reply asserts that Ground One states a claim under the Due Process Clause.  (Doc. 58, pp. 6-7).

A.     Cognizability of Petitioner's Claim

Petitioner claims the prosecutor committed misconduct when he secured petitioner's arrest using an "exhausted" warrant/case number  (2009-CF-001293, belonging to one Gregory Bernard Epps), which was then placed on the arrest warrant, the sworn complaint affidavit (the affidavit supporting the arrest warrant) and the charging information in petitioner's case.  (Doc. 35, p. 6).  Petitioner also claims that after he was arrested and began "fighting against a very high level of widespread public corruption," the prosecutor vindictively prosecuted him by (1) filing a notice of intent to seek enhanced penalties at sentencing, (2) amending the information to more serious charges and (3) moving to compel a DNA sample from petitioner.  (Doc. 35, p. 6).

The court has reviewed petitioner's direct appeal brief (doc. 51, Ex. D) and the attachments to his second amended federal habeas petition (doc. 35) to clarify the factual and legal bases of this claim.  Contrary to petitioner's allegation, the arrest warrant, sworn affidavit and capias issued in his case all contained the correct case

number, 2010-CF-001293, as did the charging information.  (Doc. 35, Attach. A; Doc. 51, Ex. A, pp. 1-8).  Petitioner's claim concerning the "exhausted" warrant/case number is actually based on a typographical error attributable not to the prosecutor, but to Mr. Epps' defense counsel, and which appeared not on any paper having to do with petitioner, but on a stipulated motion pertaining to Mr. Epps' pre-trial release. (*See* Doc. 51, Ex. D, Direct Appeal Br. at Ex. I; *see also* Doc. 51, Ex. A, pp. 65-66).

Specifically, on August 6, 2010 (after petitioner had been arrested and charged), Mr. Epps' defense counsel (Assistant Regional Counsel Evelyn Sapp) filed a document titled "Stipulated Motion For Release On Own Recognizance With Special Conditions", seeking Mr. Epps' release.  (Doc. 51, Ex. A, pp. 65-66). Attorney Sapp inadvertently placed petitioner's case number (2010-CF-001293) in the case caption instead of Mr. Epps' case number (2009-CF-001293).  The document was then erroneously filed in petitioner's case.

Petitioner does not assert, and nothing in the record suggests, that the erroneous filing of the document in petitioner's criminal case had any effect on <u>petitioner's</u> criminal proceeding.  Petitioner's labeling the claim "Due process violation" (doc. 58, p. 6) does not transform the issue into one of federal law.  The typographical error does not raise an issue of constitutional dimension.

The remaining aspect of Ground One relates to petitioner's claim of prosecutorial vindictiveness arising from the circumstances of his prosecution following commencement of his "fight[ ] against a very high level of widespread public corruption". (Doc. 35, p. 6). Specifically (as argued in petitioner's direct appeal brief), petitioner asserts that after he filed motions to dismiss the charges and to suppress evidence on June 17, 2010, the prosecutor filed a notice of intent to seek enhanced penalties on June 23, 2010, amended the information to more serious charges on July 15, 2010, and filed a motion to compel petitioner's DNA sample on August 10, 2010. (Doc. 51, Ex. D, p. 68 (petitioner's argument on direct appeal); *see also* Doc. 51, Ex. A, pp. 6, 27-29, 67-68 (relevant trial court documents)). Petitioner's motions to dismiss and to suppress were denied on July 19, 2010. (Doc. 51, Ex. A, p. 59).

Claims of prosecutorial vindictiveness are cognizable under the Due Process Clause. *See Miracle v. Estelle*, 592 F.2d 1269, 1272 (5th Cir. 1977) ("[T]he substantial discretion traditionally accorded state prosecutors in bringing defendants to trial on criminal charges is subject to the due process guarantees of the Fourteenth Amendment." (*citing Blackledge v. Perry*, 417 U.S. 21, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974))); *see also Williams v. Bartow*, 481 F.3d 492, 502 (7th Cir. 2007) ("The Due Process Clause of the Fourteenth Amendment has been interpreted to prohibit

prosecutions under circumstances suggesting a 'realistic likelihood of vindictiveness' on the part of the prosecutor." (*citing Blackledge*)).   A claim of prosecutorial vindictiveness is subject to federal habeas review.

Respondent agrees that petitioner exhausted his claim of prosecutorial vindictiveness by raising it on direct appeal.  (Doc. 44, p. 19; *see also* Doc. 51, Ex. D, pp. 66-69 (direct appeal brief)).  The First DCA summarily denied relief without explanation.  (Doc. 51, Ex. E).  The First DCA's decision qualifies as an adjudication on the merits and is entitled to deference under 28 U.S.C. § 2254.  *Harrington v. Richter*, 562 U.S. 86, 99, 131 S. Ct. 770, 786-87, 178 L. Ed. 2d 624 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

B.    Clearly Established Federal Law

Petitioner asserts that *Blackledge v. Perry, supra*, clearly establishes that the prosecutor's actions in his case deprived him of due process.  *Blackledge*, a case that came to the Supreme Court on habeas review, addressed the problem of increased punishment upon retrial after appeal.  In *Blackledge*, the defendant was convicted of misdemeanor assault in the state district court, exercised his right to a trial *de novo* in the superior court and, before the retrial, was then charged with a more serious

offense (felony assault) based on the same conduct.  *Blackledge*, 417 U.S. at 22-23.

The defendant ultimately entered a guilty plea to the indictment in the superior court.

*Id*. at 23.  The Supreme Court determined that when a prosecutor obtains heightened

charges based on the same criminal conduct after a defendant is convicted and

invokes his statutory right to appeal and be retried, there is a "realistic likelihood of

'vindictiveness'".  *Id*. at 27.  The Court held, as a matter of due process, that "such

a potential for vindictiveness", *id*. at 28, should play no part in the appellate process.

Given the danger, or "realistic likelihood", of vindictiveness under the circumstances

of that case, the *Blackledge* Court adopted a constitutional prophylactic rule applying

a presumption of vindictiveness.  *Id*. at 27-29.  The Court held:

> A person convicted of an offense is entitled to pursue his statutory right
> to a trial de novo, without apprehension that the State will retaliate by
> substituting a more serious charge for the original one, thus subjecting
> him to a significantly increased potential period of incarceration.  *Cf.*
> *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138.
>
> Due process of law requires that such a potential for
> vindictiveness must not enter into North Carolina's two-tiered appellate
> process.  We hold, therefore, that it was not constitutionally permissible
> for the State to respond to Perry's invocation of his statutory right to
> appeal by bringing a more serious charge against him prior to the trial
> de novo.

*Id*. at 28-29 (footnotes omitted).  The Supreme Court clarified, in a later decision, that

the due process violation in *Blackledge* "lay not in the possibility that a defendant

might be deterred from the exercise of a legal right, but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction". *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978).

*Blackledge* dealt with a prosecutor's decision to seek heightened charges after a successful *post-trial* appeal.  In *United States v. Goodwin*, the Court was asked to extend the presumption of vindictiveness to the *pre-trial* setting.  457 U.S. 368, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982).  The defendant in *Goodwin* pled not guilty to a misdemeanor charge and exercised his right to a jury trial.  Following invocation of these rights, the prosecutor indicted Goodwin on a felony charge arising from the same incident.   Goodwin was ultimately convicted of the felony charge and contended that the heightened charge was the product of retaliation for exercising his right to a jury trial.  457 U.S. at 370-71.  The Supreme Court noted, as an initial matter:

> [T]here is no evidence in this case that could give rise to a claim of actual vindictiveness; the prosecutor never suggested that the charge was brought to influence the respondent's conduct.  The conviction in this case may be reversed only if a presumption of vindictiveness – applicable in all cases – is warranted.

*Id*. at 380-81 (footnote omitted).  The Court held that a presumption of vindictiveness was not warranted, explaining:

There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins – and certainly by the time a conviction has been obtained – it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter. The invocation of procedural rights is an integral part of the adversary process in which our criminal justice system operates.

Thus, the timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

*Id.* at 381-82 (footnote omitted). The Court acknowledged that there was an

<u>opportunity</u> for vindictiveness, but held that "a mere opportunity for vindictiveness

is insufficient to justify the imposition of a prophylactic rule." *Id*. at 384. "The possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted. *Id*. at 384 (footnote omitted). Absent a presumption of vindictiveness and absent evidence of actual vindictiveness, "no due process violation has been established." *Id*. at 384.

The Eleventh Circuit has not read *Goodwin* as propounding a categorical rule against a presumption of prosecutorial vindictiveness in the pre-trial setting; but has instead interpreted *Goodwin* as simply directing courts to evaluate the "realistic likelihood of vindictiveness" in the given particular factual situation, including a pre-trial situation, and to determine whether any facts make a presumption of vindictiveness proper. *United States v. Barner*, 441 F.3d 1310, 1317 (11th Cir. 2006).

C.      Section 2254 Review of State Court's Decision

The state court's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law. In rejecting petitioner's claim, the state court implicitly declined to invoke a presumption of vindictiveness. This decision is consistent with *Blackledge* and *Goodwin* because,

assuming a presumption <u>could</u> arise in the pre-trial context, in addition to the threshold showing of exercise of rights followed by augmentation of charges, petitioner must identify other factors that raise a realistic likelihood of vindictiveness. Petitioner has not shown anything sufficiently unusual in the pre-trial motions history of this case to distinguish it from *Goodwin*.  *See, e.g., Barner*, 441 F.3d at 1318-21 (holding that presumption of vindictiveness did not arise from filing of fifth superseding indictment after defendant exercised protected rights when he filed pre-trial motions to suppress and to dismiss counts in prior indictment; defendant therefore had to show actual vindictiveness to establish a due process violation). Absent a presumption of vindictiveness, petitioner must show actual vindictiveness.

Petitioner wholly fails to provide evidence of actual vindictiveness. Petitioner's speculation that the heightened charges and enhanced penalties were "vindictive" because they followed his pre-trial motions to dismiss and to suppress evidence is insufficient.  Neither petitioner's conclusory assertion of vindictiveness, nor the record in this case, plausibly shows that the prosecutor was actually motivated by the desire to punish petitioner for the exercise of his rights, and that the amended information, notice of intent to seek enhanced penalties, and motion to compel petitioner's DNA sample was the result of such animus.  *See Barner*, 441 F.3d at 1322 (elements of prosecutorial vindictiveness are animus plus causation) (*citing*

*United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001)).  Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two  "Their (sic) was no legal arrest warrant issued for Petitioner's arrest out of Alachua County, Florida in 2010; wherein Petitioner's 4th and 14th Amendment Rights were violated." (Doc. 35, p. 7).

Petitioner's second claim challenges the facial validity of the arrest and capias warrants.  Petitioner challenges the arrest warrant on the ground that it contained the wrong case number, i.e., the "exhausted" case number belonging to Mr. Epps.  (Doc. 35, p. 8).[5]  Petitioner challenges the capias warrant on the grounds that it was not signed by the sheriff or a deputy sheriff, and was not served.  (*Id.*).[6]  Petitioner states on the petition form that he did not raise this claim on direct appeal or in his postconviction proceeding.  (Doc. 35, pp. 7, 9).  Petitioner explains: "Trial counsel was ineffective, Petitioner's Appellate Counsel was ineffective, Petitioner was not provided counsel during post-conviction proceedings."  (Doc. 35, p. 7).

---

[5]Petitioner alleges: "On or about May 19, 2010, Gainesville Police Department (GPD) detectives provided the Alachua County Sheriff's Office Arrest Warrants Division with manufactured sworn complaint affidavit and exhausted arrest warrant Number 01-2009-CF-001293-A that was assigned to Mental health patient already in custody within Alachua County Jail named Gregory Bernard Epps.  Mr. Epps' exhausted arrest warrant was manipulated and fraudulently used to have Petitioner arrested in Pembrooke, Georgia May 19, 2010."  (Doc. 35, p. 8).

[6]Petitioner alleges: "[O]n May 27, 2010 GPD detectives provided Judge Ysleta McDonald with manufactured documents to obtain an arrest warrant for Petitioner.  This arrest warrant was not served nor returned unserved by ASO, it also was not signed by Sheriff Sadie Darnell or any other deputy sheriff."  (Doc. 35, p. 8).

Respondent asserts a procedural default defense, arguing that because petitioner failed to present this claim to the state courts and is now barred by state procedural rules from doing so, the claim is procedurally barred from federal habeas review.  (Doc. 44, pp. 22-24).  Respondent adds that aside from a rote citation to the Fourth and Fourteenth Amendments, Ground Two fails to allege a claim of federal constitutional dimension and should be denied on that basis as well.  (Doc. 44, p. 24).

Petitioner's reply clarifies that his claim is one of "warrantless arrest" arising under the Fourth and Fourteenth Amendments.  (Doc. 58, p. 9).  Petitioner argues that the cause of his procedural default is trial counsel's ineffectiveness in failing to adequately investigate the case.  Petitioner refers the court to his ineffective assistance claim raised in Ground Six, below.  (*Id*.).  Ground Six faults trial counsel for failing to discover that "the formal charging information was invalid on its face; wherein the prosecutor fraudulently used pre-assigned case/exhausted arrest warrant number: <u>01-2009-CF-001293-A</u>. . . .".  (Doc. 35, p. 18).

A.    Cognizability of Petitioner's Claim

As discussed in Ground One, petitioner's claim that the incorrect case number was placed on the sworn affidavit and arrest warrant in his case does not raise an issue of constitutional dimension – the events as imagined by petitioner simply did not happen, and the "error" that did occur was a *de minimis* typographical error with

no bearing on petitioner's case.  *See supra* Ground One, subpart A.  Similarly, petitioner's challenge to the facial validity of the arrest and capias warrants on the grounds that they were not served or signed by the sheriff cannot provide a basis for federal habeas relief, because petitioner has not demonstrated that the alleged errors had any bearing on the validity of his  conviction.  The arrest and capias warrants were only a step toward the arrest and charging of petitioner with criminal offenses.  Petitioner was not convicted based upon the sworn affidavit or the issued warrants; he was convicted under the authority of the information, as amended.  *Myers v. Rhay*, 577 F.2d 504, 507 (9th Cir. 1978) ("It is well settled that illegal arrest or detention of a suspect does not void a subsequent conviction." (*citing Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975); *Frisbie v. Collins*, 342 U.S. 519, 72 S. Ct. 509, 96 L. Ed. 541 (1952); *Ker v. Illinois*, 119 U.S. 436, 7 S. Ct. 225, 30 L. Ed. 2d 421 (1886))).

Neither the sworn complaint affidavit, the arrest warrant, nor the capias warrant was introduced at petitioner's trial.  None of the evidence introduced at trial bore a direct relationship to petitioner's arrest.  Instead, the evidence against petitioner consisted of eyewitness testimony, the testimony of petitioner's co-defendant Angela Simmons, and physical evidence obtained from a search (conducted pursuant to Ms. Simmons' consent) of a residence petitioner and Ms. Simmons shared and of

surrounding woods.  (Doc. 51, Ex. B).  Petitioner's challenge to the facial validity of the warrants is not cognizable on federal habeas review. *See, e.g., Workman v. Cardwell*, 471 F.2d 909, 910-911 (6th Cir. 1972) ("The District Court correctly ruled that Petitioner's challenge of the validity of the arrest warrant – absent any claim that Petitioner was thereby deprived of a fair trial – does not rise to the level of a constitutional claim cognizable in a federal habeas corpus proceeding.  Petitioner does not assert that any evidence obtained incident to his arrest was introduced at trial or that his trial was otherwise affected by the asserted defect in the arrest warrant." (citing cases from the Ninth, Seventh, Fifth and Fourth Circuits)); *see also, e.g., Jackson*, 729 F.2d at 359 n.2 ("The asserted deficiencies in the affidavit supporting the arrest warrant are of no consequence as [the petitioner] was in no way prejudiced at trial by the resulting arrest.  Moreover, such a claim is barred under *Stone v. Powell*, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976)).

In so far as petitioner claims the arrest and capias warrants were invalid or a nullity due to their failure to comply with state-law requirements, that argument similarly provides no basis for federal habeas review.  The scope of review of a habeas corpus petition is limited to determining whether petitioner's custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254; *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011) ("The habeas

statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted). "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed. 2d 385 (1991) (holding that errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief; "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). "Th[e] limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

B.      Exhaustion and Procedural Default

Even if petitioner's claim were cognizable on habeas review, petitioner failed to present a challenge to the arrest warrants on direct appeal or in his postconviction motion. Although petitioner raised a Fourth Amendment claim on direct appeal as Issue Three, that claim had nothing to do with the arrest warrants; it argued, instead, that the search of the residence petitioner shared with Angela Simmons was illegal

because although it was made pursuant to Simmons' consent, her consent was invalid because it was obtained while she was in custody and was therefore involuntary. (*Id.*, pp. 48-57). Petitioner's postconviction motion raised only ineffective assistance of counsel claims. (Ex. U). A federal habeas petitioner does not satisfy the exhaustion requirement merely by presenting the state court with all the facts necessary to support a yet unconceived federal claim, or by presenting a somewhat similar claim. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1343-44 (11th Cir. 2004). "The petitioner must present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim.'" *Id.* at 1344 (*quoting Picard*, 404 U.S. at 277, 92 S. Ct. at 513). Petitioner's substantive challenge to the arrest and capias warrants is not the same as a Sixth Amendment ineffective assistance of trial counsel claim, even if the latter is based on counsel's failure to challenge the warrants. The two are separate and distinct for purposes of the AEDPA's exhaustion requirement. *Pietri v. Fla. Dep't of Corr.*, 641 F.3d 1276, 1289 (11th Cir. 2011) (holding that federal habeas petitioner's substantive judicial bias claim was not the same claim as his ineffective assistance of appellate counsel claim based on counsel's failure to raise the substantive claim; the two claims were "separate and distinct" for purposes of the federal habeas exhaustion requirement) (*citing Lefroy v. Sec'y for Fla. Dep't of Corr.*,

421 F.3d 1237, 1260 n.24 (11th Cir. 2005) (noting that substantive claim was "separate and distinct" from ineffective assistance claim based on substantive claim)); *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (holding that ineffective assistance claim based on counsel's failure to object to jury instruction was not the same as substantive due process claim challenging the trial court's giving of that instruction).

Petitioner has made none of the showings requisite to excusing his procedural default.  Petitioner's attempt to establish cause by asserting that his appellate counsel was ineffective cannot excuse the procedural default, because petitioner has not exhausted that ineffective assistance of appellate counsel claim.  Petitioner's state habeas petition alleging ineffective assistance of appellate counsel was based on counsel's failure to argue the Fourth Amendment issue petitioner, himself, raised on direct appeal – the allegedly illegal search of petitioner's residence based on Simmons' consent – and appellate counsel's failure to argue that trial counsel was ineffective for failing to challenge the search prior to trial.  (Ex. L).  "The comity and federalism principles underlying the doctrine of exhaustion of state remedies require an ineffective-assistance claim to be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  *Edwards v. Carpenter*, 529 U.S. 446, 447, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000); *Henderson*

*v. Campbell*, 353 F.3d 880, 896 (11th Cir. 2003) ("[T]he Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default." (*citing Edwards v. Carpenter, supra*)); *see also, e.g., Dowling v. Sec' for Dep't of Corr.*, 275 F. App'x 846, 847-878 (11th Cir. 2008) ("Because Dowling did not raise his ineffective assistance of appellate counsel claim in state court and is precluded from seeking additional review of that claim in state court, Dowling's ineffective assistance of appellate counsel claim is procedurally defaulted and cannot be considered as cause for the default of his trial court error claim.").

Petitioner's attempt to establish cause by asserting that his trial counsel was ineffective for failing to challenge the warrants prior to trial (*see* doc. 58, pp. 9-11) does not establish cause, because even if petitioner did exhaust this ineffective assistance claim in state court, counsel was not ineffective for failing to raise it because, as discussed below, petitioner's challenge to the warrants lacks merit. *See Murray v. Carrier*, 477 U.S. at 488 ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default."); *see also* Ex. V, pp. 183-84

(state postconviction court's rejection of petitioner's ineffective assistance claim based on counsel's failure to challenge the warrants).[7]

Petitioner's Ground Two is procedurally barred from federal habeas review.

C.     Merits

Even were this ground cognizable on habeas review, and notwithstanding any procedural default, petitioner is not entitled to federal habeas relief because his claim is without merit.  *See* 28 U.S.C. § 2254 (b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  The record conclusively establishes that the sworn affidavit, arrest warrant, capias warrant, and information contained the correct case number.  (Doc. 51, Ex. A, pp. 1-12).  The record also conclusively establishes that the capias warrant issued May 27, 2010, was served, and that the arrest form filed with the court, reporting service of the warrant, was signed by the arresting officer.  (Doc. 51, Ex. A, pp. 8-12).  The fact that the return on the actual capias was not signed by the sheriff is of no consequence.  To the extent petitioner references the lack of an executive warrant, petitioner's waiver of

---

[7]Additionally, petitioner's *Martinez*-based argument is misplaced.  *See Martinez v. Ryan*, — U.S. —, 132 S. Ct. 1309, 182 L. Ed. 2d (2012)  (establishing an equitable rule whereby a federal habeas petitioner may establish cause, in narrow circumstances, to excuse the procedural default <u>of an ineffective assistance of trial counsel claim asserted in a first initial-review collateral proceeding</u>).

extradition waived petitioner's right to require the issuance and service of an executive warrant. (Doc. 51, Ex. A, pp. 156-157). Ground Two provides no basis for federal habeas relief.

Ground Three        "Due Process Violation under 14th Amendment of Petitioner's rights; wherein police injected lies into affidavit." (Doc. 35, p. 10).

This claim challenges the April 7, 2010 sworn complaint affidavit supporting the arrest warrant on the grounds that it contained "lies." (Doc. 35, p. 10). Petitioner identifies the "lies" as: "description of black male, police response to the scene, black firearm inside of a white bag allegedly dropped at scene, the firearm turned into a piece of black hair." (*Id.*). Petitioner asserts he exhausted this claim by raising it in his postconviction proceeding. (*Id.*).

Respondent asserts that petitioner's claim fails to raise an issue of federal constitutional dimension and is procedurally defaulted because all of the claims raised in petitioner's postconviction motion alleged ineffective assistance of counsel and the present ground raises a direct claim of police misconduct. (Doc. 44, p. 25).

A.     Cognizability of Petitioner's Claim

Petitioner claims he was arrested based on an affidavit that contained lies. Petitioner relies on *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) to argue that his claim is one of constitutional dimension. (Doc. 58, p. 3).

In *Franks*, the Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. at 155-56.  The Court emphasized that not all false statements warrant a hearing under the Fourth Amendment:  "There must be allegations of deliberate falsehood or of reckless disregard for the truth," and "[a]llegations of negligence or innocent mistake are insufficient."  *Id*. at 171.  Although *Franks* involved a search warrant, the United States Supreme Court and the Florida Supreme Court have recognized that the same analysis applies to arrest warrants.  *See Herring v. United States*, 555 U.S. 135, 145, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009); *Johnson v. State*, 660 So.2d 648 (Fla. 1995); *Harris v. State*, 438 So. 2d 787 (Fla. 1983).

As with Ground Two, petitioner's challenge to the affidavit supporting the arrest warrant provides no basis for federal habeas relief.  Petitioner has not

demonstrated that the statements in the affidavit have any bearing on the validity of his actual conviction.  *See supra*, Ground Two, subpart A.

B.     Exhaustion and Procedural Default

The same procedural default analysis used in Ground Two, above, applies here. *See* discussion *supra* Ground Two, Part B.  Petitioner admits he did not raise this claim on direct appeal.  (Doc. 35, p. 10).  Petitioner's Sixth Amendment ineffective assistance claim raised in his postconviction proceeding is a separate and distinct claim from his present challenge to the sworn complaint affidavit.  Petitioner makes none of the requisite showings to excuse his procedural default.  *See* discussion *supra* Ground Two, Part B.

Ground Three is procedurally barred from federal habeas review.

C.     Merits

Even were this ground cognizable on habeas review, and notwithstanding any procedural default, petitioner is not entitled to federal habeas relief because his claim fails on the merits.  *See* 28 U.S.C. § 2254 (b)(2).  An accused can be arrested so long as a judge finds probable cause in a nonadversarial proceeding in which the judge may consider hearsay and written testimony.  *Gerstein v. Pugh*, 420 U.S. 103, 120, 95 S.Ct. 854, 43 L. Ed. 2d 54 (1975).  The arrest warrant in this case was supported

by an affidavit based on (hearsay) statements made by the victims and an eyewitness,

and based on the officer's subsequent investigation:

On 03-24-10, at approximately 2210 hours, Ofc. S.E. Jones #765 GPD patrol officer, responded to the Golden Budda, 613 NW 16th Ave. referenc[ing] an armed robbery.  Victim Van Boc advised that he had just turned off the outside lights for the night and was beginning the process of cleaning up.  Victim Boc, Victim Fang Su, and the cook (Chung Wang) were in the kitchen.  Victim Su was closest to the entrance of the kitchen with her back to the door.  No other patrons were inside the restaurant at the time.  VI Boc was facing south and observed an unknown black male suspect enter the business through the back door (south side of the building).

The suspect quickly pulled a black semi auto handgun from the left side of his waist band with his right hand.  The gun was inside a white bag, which was clearly visible protruding from the waistband as well.  The suspect grabbed Victim Su by the shoulder, placed the gun to the back of her head and bent her over, towards the ground.  Victim Boc intervened and attempted to separate the two of them.  The suspect pushed Victim Su to the ground and then shoved Victim Boc and turned towards the cash register.  The suspect then grabbed the register and violently swung the register towards the door releasing the power cord from the wall.  The suspect then exited the business the same way he entered, and ran south on foot.  The suspect dropped the white bag which contained the black semi auto handgun.  The suspect was described as a black male possibly between 20-30 years of age and possibly had some facial hair, more likely unshaven instead of a beard or mustache.

GPD patrol set perimeters and identified Randy Berta as a potential witness who resides in the area of the Golden Budda.  At the time of the robbery, Witness Berta was walking his dog and provided the following: Witness Berta observed a dark, Green vehicle, possibly 1990-1999 year; being driven by a black female circling the block two times as if she was looking for something or someone.  The black female

waved at Witness Berta and came to a stop at NW 15th Ave and NW 6th St.  Witness Berta observed a B/M with a large build walking south from the Golden Budda driveway located just north of NW 15th Ave and NW 6th St.  The B/M was walking carrying a cash register in his arms and was talking on his cell phone.  While observing the above, Witness Berta entered into his cell phone the description of the vehicle as a 4dr vehicle, older, dark green in color, chrome hub-caps with one missing from the left rear.  Witness Berta observed the suspect put the cash register in the back seat of the described vehicle and then enter the passenger side.  The same black female then drove the vehicle north on NW 7th St and turned left (west) onto NW 16th Ave. departing the area.  Victim Berta observed the rear of the vehicle and entered into his cellular telephone tag# BJA7631 and recorded the state as possibly Oregon (White with black lettering).

Investigation was conducted regarding Oregon tag BJA7631.  As a result, no record was found for the tag in the state of Oregon.  A registration was found for the same tag number from the state of Georgia.  The tag is registered as follows: Issued 12-17-2009 and valid thru 01-23-2011.   VIN: 2G1WL52M7S9335840, 1995, Chevrolet, Lumina, 4S, Green.  Registered to Robert McKinnon III, 01-23-83, 190 Camellia St., Richmond Hill, Ga.

I conducted investigation into Robert McKinnon III which resulted in the following: Robert McKinnon III, B/M, DOB: 01-23-83.  McKinnon was run in numerous data bases and as a result the following was established.  McKinnon has an on again off again girlfriend relationship with an Angela Nicole Simmons, B/F, DOB: 09-15-88.  On 03-15-10, McKinnon III reported to Ocala, Fl. Police Department that Simmons stole his vehicle which he described as a 1994, Green, Chevrolet Lumina bearing a Georgia tag, but that he couldn't remember the tag number.  McKinnon stated he would get the correct paperwork for the vehicle and come in the following day and make a report.  It is believed that this did not occur.  This occurred at 706 NE 27th St. Ocala, Fl.  McKinnon has family members in the Ocala area and has history in the Citrus County Area.  Simmons has history in Dunnellon and the Ocala area.   Based on all the above, I compiled a photo spread

consisting of six photos with one being the photo of Angela Simmons, B/F, DOB: 09-15-88. I compiled another photo spread consisting of six photos with one being the photo of Robert McKinnon III, B/M, DOB: 01-23-83.

On 04-01-10, I met with Witness Randy Berta. I showed the witness the photo spreads separately. Witness Berta chose the photo and positively identified Co-Defendant Angela Simmons, B/F, DOB: 09-15-88, as the B/F he saw driving the suspect vehicle described in paragraph 3. Witness Berta observed the other photo spread and chose the photo and positively identified Defendant Robert McKinnon III, B/M, DOB: 01-23-83 as the suspect he observed carrying the cash register and putting it in the suspect vehicle and then departing.

The victims were interviewed and were unable to choose the suspect from the photo spread. The victims feared for their lives during the incident and just tried to comply with the suspect's demands.

Approximately $200.00 in cash was contained in the cash register and is what was reported as stolen during the robbery.

(Doc. 51, Ex. A, pp. 2-5).

The state court did not improperly issue the warrant, because the content of the officer's affidavit, including the hearsay statements, sufficiently established probable cause for petitioner's arrest. Petitioner points to statements in the affidavit and labels them "lies", but he fails to allege any specific facts, or point to any evidence in the record, showing that any statement material to the issue of probable cause was false. Those aspects of the affiant-officer's statements material to the issue of probable

cause are confirmed by the evidence presented at trial.  (Doc. 51, Ex. B).[8]  Petitioner also fails to point to any evidence in the record suggesting that the affiant-officer included a false statement in the sworn complaint affidavit <u>knowingly and intentionally, or with reckless disregard for the truth</u>.  Petitioner also fails to establish that had any "false" material been removed and replaced with the "true" material that came out at trial, the resulting affidavit would have been insufficient to establish probable cause.

Petitioner's Ground Three does not raise a colorable claim that petitioner's conviction violates the Constitution, and provides no basis for habeas relief.

<u>Ground Four</u>        <u>"Giglio Violation"</u>  (Doc. 35, p. 12).

Petitioner alleges the following:

> On May 19, 2010 Gainesville Police Department (GPD) detective recovered a gray cash register drawer with gray cord behind Petitioner's residence.  GPD logged the gray cash register drawer with gray cord into their evidence inventory before taking it to the victims for identification purposes.  On May 19, 2010, GPD detectives showed witness Fred Shroeder the gray cash register drawer inside of a brown paper bag.  Mr. Shroeder told GPD detectives that the cash register drawer had been out there in the woods long before Petitioner had moved into his home.  On or about June 3, 2010 Mr. Shroeder advised

---

[8]At trial, neither of the victims testified to seeing a white bag.  (Doc. 51, Ex. B, pp. 370-371, 375).  The white bag found at the scene was not introduced into evidence.  (Ex. B).  The statements in the warrant affidavit concerning the white bag, however, were not necessary to, or even a significant factor in, the finding of probable cause.

Petitioner over recorded phone conversation within Alachua County Jail about the cash register drawer already being in the woods.

Sometime after June 3, 2010 Prosecutor George Wright went to the Jail to listen to Petitioner's phone conversations and apparently listened to his conversation with witness Shroeder. Prosecutor Wright advised GPD detectives about the problem. GPD detective then broke their own chain of evidence (gray cash register drawer) recovered May 19, 2010 by manufacturing falsified forensic crime unit report dated June 7, 2010 that changed the cash register drawer to being "<u>tan</u>" with a broken cash keeper. During Petitioner's trial September 15, 2011 GPD detectives committed perjury to get the "<u>tan</u>" cash register drawer entered into trial against Petitioner. The trial judge entered the "<u>tan</u>" cash register drawer into evidence during Petitioner's trial September 15, 2011. It was not the gray cash register drawer GPD detective had recovered May 19, 2010 and the "<u>tan</u>" cash register drawer was not a part of the state's evidence inventory during Petitioner's trial nor after the trial.

On September 15, 2011 during Petitioner's trial the state did not show the victims either cash register drawers for identification purposes, but the state did show witness Fred Shroeder the "<u>tan</u>" cash register drawer during Petitioner's trial. Mr. Shroeder identified the brown paper bag used to carry the evidence, but advised the state attorney that the "<u>tan</u>" cash register drawer being shown to him during the trial was not the same cash register drawer GPD detectives had recovered from behind his home and shown to him inside of a brown paper bag May 19, 2010. Nevertheless, Petitioner was found guilty of all charges and sentenced to 25 years prison with 10 years mandatory minimum.

(Doc. 35, pp. 13-14). The essence of petitioner's claim appears to be that the State, after initially finding a piece of cash register drawer unconnected to the robbery (according to Mr. Shroeder's testimony) surreptitiously found and introduced into evidence a different cash register drawer and falsely represented to the court (through

the testimony of Investigator Woodmansee and co-defendant Simmons) that this drawer was found in the woods outside petitioner's residence and was the cash register drawer stolen during the robbery.   Petitioner claims the prosecutor's introduction of the evidence constitutes a *Giglio* violation.  *See Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972).  Petitioner states on the petition form that he did not raise this claim on direct appeal because trial and appellate counsel were ineffective, but that he did raise the *Giglio* claim in his postconviction proceeding.  (Doc. 35, pp. 12, 15).  Petitioner refers the court to Ground Four of his postconviction motion, but also references Issues Two and Three of his direct appeal.  (Doc. 35, p. 13).

Respondent asserts a procedural default defense, arguing that petitioner did not raise a *Giglio* claim in his postconviction motion or on direct appeal: he raised only ineffective assistance of counsel claims in his postconviction motion and, on direct appeal, claimed trial court error in admitting the cash register drawer without sufficient authentication under Florida evidentiary standards.  (Doc. 44, p. 27).

A.      Exhaustion and Procedural Default

Petitioner's Ground Four in his motion for postconviction relief raised a Sixth Amendment ineffective assistance of trial counsel claim.  (Ex. U, pp. 23-27).  This

does not satisfy the exhaustion requirement, because it is separate and distinct from petitioner's present substantive *Giglio* claim. *See Pietri, supra*.

Petitioner's reference to Issues Two and Three of his direct appeal brief does not help him. In Issue Two of his direct appeal, petitioner raised an issue concerning the cash register drawer, but framed the issue as one of trial court error in admitting the drawer without sufficient authentication. (Doc. 51, Ex. D, pp. 39-47). Petitioner made general references to due process, but his substantive argument was that there was insufficient authentication of the cash register drawer under Florida evidentiary standards, and that he was prejudiced because without the drawer he would not have been convicted. Petitioner also referenced having been deprived of the opportunity to prepare a proper and sufficient defense in violation of procedural due process, but he did not explain how or why he was deprived of the opportunity to prepare a defense. (*Id.*). Petitioner cited to *Alcorta v. Texas*, 355 U.S. 28, 78 S. Ct. 103, 2 L. Ed. 2d 9 (1957), for the proposition that "due process is violated by introducing evidence that creates a false impression regarding a material fact, if it was elicited by the prosecutor with knowledge of its inaccuracy." (Ex. D, p. 43). Petitioner did not cite to *Giglio* or argue the elements of a *Giglio* claim.

In Issue Three of petitioner's direct appeal, petitioner argued that the trial court erred in denying his *pro se* motion to suppress evidence obtained during the search

of the residence he shared with Ms. Simmons, because the search was illegal (it was based on Ms. Simmons' consent which did not meet the requirements for voluntariness). (Ex. D, pp. 48-57). Petitioner did not cite to *Giglio* or argue the elements of a *Giglio* claim. Petitioner's present *Giglio* claim was not fairly presented to the state court on direct appeal.

Petitioner attempts to establish cause by referencing appellate counsel's "ineffectiveness". This does not work, because petitioner did not exhaust that claim in his state habeas petition. *See* discussion *supra* Ground Two, Part B.

Petitioner's attempt to establish cause by asserting that his trial counsel was ineffective for failing to assert a *Giglio* violation at trial (*see* doc. 58, pp. 9-11) is also insufficient, because even if petitioner did exhaust this ineffective assistance claim in state court, trial counsel was not ineffective for failing to raise petitioner's proposed *Giglio* claim because, as discussed below, the claim lacks merit. *See Murray v. Carrier*, 477 U.S. at 488; *see also* Ex. V, pp. 188-189 (state postconviction court's rejection of petitioner's ineffective assistance claim based on counsel's failure to challenge admission of the cash register drawer).

Petitioner's Ground Four is procedurally barred from federal habeas review.

C.    Merits

The procedural default aside, petitioner is not entitled to federal habeas relief because his *Giglio* claim fails on the merits.  *See* 28 U.S.C. § 2254 (b)(2).  "In *Brady v. Maryland*, the Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment.'"  *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1319 (11th Cir. 2013) (*quoting Brady*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 251 (1963)).  "*Giglio* error, a species of *Brady* error, occurs when 'the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury.'"  *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006) (*quoting Ventura v. Att'y Gen., Fla.*, 419 F.3d 1269, 1276-77 (11th Cir. 2005)); *see also Hammond v. Hall*, 586 F.3d 1289, 1306-1307 (11th Cir. 2009) ("A *Giglio* claim involves an aggravated type of *Brady* violation in which the suppression of evidence enabled the prosecutor to put before the jury what he knew was false or misleading testimony, . . . or allowed the prosecutor himself to make a false statement to the jury. . . ." (*citing Ford v. Hall*, 546 F.3d 1326, 1332 (11th Cir. 2008), *and United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995))).

Here, no *Giglio* violation appears because petitioner does not identify any evidence relating to the cash register drawer that was withheld from the defense. *See Hammond*, 586 F.3d at 1308-09 (holding that *Giglio* claim failed because the evidence was known by defense counsel). The record establishes that prior to trial, the State disclosed to the defense all of the evidence upon which petitioner's present claim is based – the cash register drawer introduced into evidence, as well as the names of all witnesses having relevant information about the drawer and the search near petitioner's residence (Investigator Woodmansee, Mr. Schroeder, Ms. Simmons and the victims). (Doc. 51, Ex. D, Attach. to Initial Brief at Ex. F; Ex. U, pp. 61-62, 64, 66-67). The State's discovery filings also disclosed that after Woodmansee took custody of the cash register drawer recovered during the search, he showed that drawer to the victims and they identified it as the drawer stolen from their restaurant. (*Id.*). Defense counsel was obviously aware of the evidence giving rise to petitioner's present claim concerning the discovery of an additional drawer during the search, as illustrated by counsel's questioning of the witnesses and his objection to admission of the cash register drawer. (Ex. B). At trial, Victim Boc described the cash register drawer stolen from his cash register as follows: "Of the five slots to hold money, one of the plastic things used to hold the money down was broken. . . . The second one from this side, the left-hand side." (Ex. B, pp. 377-378). Investigator Woodmansee

testified that he assisted in the May 19, 2010 search and collection of evidence from the residence petitioner shared with Ms. Simmons. (Ex. B, p. 415). Woodmansee identified two photographs of a cash register drawer he found in the woods approximately 200-300 yards from the residence. (Ex. B, pp. 418-419). Woodmansee testified that Ms. Simmons had directed them to the woods as the location where petitioner discarded the cash register drawer. (Ex. B, p. 419). Woodmansee identified the cash register drawer introduced into evidence as the drawer he collected from the woods and photographed upon its discovery. (Ex. B, pp. 418-420 (referencing State's Exhibits 16-17 (photographs of drawer in the woods) and State's Exhibit 18 (cash register drawer))). Woodmansee testified that the drawer was in the same condition as when he last saw it. (*Id*.). When the State moved the drawer into evidence, defense counsel objected:

> MR. VAUGHN [Defense counsel]: The objection would be, Judge, this is the one they found in the woods. I don't know how it ties in to this robbery whatsoever at this point.
>
> MS. MELLMAN [Prosecutor]: That would be –
>
> THE COURT: I think as the trier of fact it would be up to me to determine those questions as to connecting it. It's certainly circumstantially admissible in that apparently the codefendant indicated to the investigators that this is where the cash drawer was disposed, and in that immediate vicinity they found it. So I think there's a nexus between the drawer and the crime that makes that drawer probative, so I'm going to admit that over the defense's objection.

(Ex. B, p. 421).  When Woodmansee was asked whether there was anything out of the ordinary about the cash register drawer he found and introduced into evidence, Woodmansee responded: "Yes.  I noticed that it has cash keepers, which hold the bills down, the plastic keepers, that one of them is broken."  (*Id*., p. 421).  On cross-examination, Woodmansee admitted that he was unable to get any fingerprints from the cash register drawer or the gun found at the residence.  (*Id*., p. 422).  Co-defendant Angela Simmons described her and petitioner's respective roles in the robbery.  Ms. Simmons testified that when she and petitioner returned to their residence with the stolen cash register drawer, petitioner took the money out of the drawer and they then took the drawer outside behind the house into the bushes and petitioner "slung it." (*Id*., p. 440).  When Ms. Simmons later returned to the residence with the officers, she led them out into the woods and told them the cash register drawer was out there.  (*Id*., p. 441).  When shown the photographs of the cash register drawer admitted into evidence during Woodmansee's testimony (State's Exhibit 17), Simmons identified the drawer in the photograph as the cash register drawer petitioner stole during the robbery.  (*Id*., pp. 442-443).

The defense called Mr. Schroeder as a witness.  Mr. Schroeder testified that police officers came to the residence he rented to petitioner and Ms. Simmons, and questioned him (Schroeder).  (Ex. B, p. 497).  Mr. Schroeder testified that at one point

when the officers, with Ms. Simmons, were searching the woods behind his residence, the officers retrieved "a piece of plastic or cashier drawer," put it in a bag, and showed it to Mr. Schroeder.  Mr. Schroeder told the officers that the item they were showing him had been out in the woods long before petitioner and Ms. Simmons moved in.  (Ex. B, pp. 497-501).   During the State's cross-examination of Mr. Shroeder, it became clear that the plastic item Schroeder spoke of as having been on his property before petitioner moved in was not the same item officers had located 15 feet from the residence (as opposed to 200-300 yards), and was not the cash register drawer admitted into evidence.  (Ex. B, pp. 501-504).  When Mr. Shroeder was shown the cash register drawer admitted into evidence, he testified as follows:

Q [Prosecutor]: Now, this is pretty clearly a register drawer, isn't it?

A [Mr. Schroeder]: Yep.  Well, that right there, that's not the one I'm talking about.

Q: Okay.  So it was something different that you threw?

A: It was similar to that, yeah, but it didn't have the things I don't believe.

Q: Had you ever seen this behind your home (indicating)?

A: No.

Q: So you don't [know] when this –

Case 1:14-cv-00227-WS-CJK   Document 94   Filed 03/30/16   Page 48 of 58

A: That there's got metal in it.  The thing I'm talking about was plastic. It was like an insert.  That's a whole drawer.

Q: Okay.  Do you have any idea how this might have gotten into the woods behind your home?

A: Now you got me.

. . . .

BY MR. VAUGHN [Defense counsel]:

Q: Mr. Schroeder, so this is not what they showed you?

A: What I saw in that bag is the same piece that I throwed out in my yard.  That's not it.

MR. VAUGHN: Okay.  Thank you.

(Ex. B, pp. 503-504).  Defense counsel was aware of all the facts forming the basis of petitioner's present *Giglio* claim.  Petitioner attempts to present, as an undisclosed fact, that the cash register drawer admitted into evidence was "manufactured" and "counterfeit", but his labels are not based on any true facts or evidence.

Petitioner's *Giglio* claim also fails because petitioner has not shown the prosecutor presented false or misleading evidence.  The fact that a piece of plastic unconnected to the robbery was also found in the woods near the residence on the day of the search does not suggest that the cash register drawer admitted into evidence at

trial was not also recovered that day from the wooded area surrounding the residence or that it was not the cash register drawer stolen during the robbery.

Petitioner's allegations do not raise a colorable claim that the State suppressed evidence or presented false or misleading testimony at trial.  Ground Four provides no basis for federal habeas relief.

Ground Five          "Violation of Petitioner's 14th Amendment rights to due-process of the law for failing to prove each element of the crime of robbery with a firearm; wherein fact finder did not make specific finding on the jury's verdict form to determine whether [Petitioner] allegedly carried a firearm during the course of committing Robbery."  (Doc. 35, pp. 15-16).

Petitioner claims his conviction for robbery with a firearm violates due process because the judge failed to make a specific finding on the verdict form that he carried a firearm while committing the robbery.  Petitioner alleges:

> Petitioner (Mr. McKinnon) and alleged co-defendant Angela Simmons were charged in a single information with Robbery with a Firearm contrary to section 812.13(2)(A) and 775.087 (2)(A) Florida Statutes.  On September 15, 2011 Petitioner was found guilty at the close of bench trial, as to count one: Robbery with a Firearm, the court found Petitioner guilty as charged in count one of the information.

> In regards unto the court further finding whether [Petitioner] allegedly carried a firearm during the course of committing Robbery, their was not any such finding made on the Jury's verdict form, which demonstrates on the face of the record that the court did not prove essential and statutory element of Robbery with a Firearm.  Section 812.13(2)(A) Florida Statutes provide in pertinent part: If in the course of committing the Robbery the offender carried a Firearm or other

deadly weapon, the Robbery is a Felony of the first degree, etc.  The firearm is a statutory element of Robbery with a Firearm and the court made no specific finding on the verdict form to determine whether [Petitioner] allegedly carried a firearm during the <u>course</u> of committing Robbery; wherein Section 812.13(3) Florida Statutes provide that "an act shall be deemed in the <u>course</u> of committing Robbery"; this particular act is required in order to apply sentencing enhancements for use of firearm during commission of Robbery.

Nevertheless, Petitioner was sentenced to 25 years imprisonment with 10 years mandatory minimum under 10/20/life sentencing enhancement scheme enforced through section 775.087(2)(A) Florida Statutes without the court making a specific finding on the verdict form to determine whether a firearm was even carried during the <u>course</u> of committing Robbery.

(Doc. 35, pp. 16-17).  Petitioner asserts he presented this claim to the state courts in his motions to correct sentence filed under Rule 3.800(a) on June 30, 2014.  (*Id*. p. 17).  Petitioner then states, however: "Note: The above issue at ground five was not exhausted, because Petitioner was not provided post-conviction counsel." (*Id*., p. 17).

Respondent asserts that to the extent petitioner is raising the same claim he presented in his Rule 3.800(a) motions, his claim presents a purely state-law sentencing matter which is not subject to federal habeas review.  (Doc. 44, p. 30).  Respondent asserts that to the extent petitioner is challenging the sufficiency of the evidence to support his conviction for robbery with a firearm, his claim is procedurally defaulted because he did not properly raise a sufficiency of the evidence claim in state court.  (*Id*.).  In the alternative, respondent argues that even if petitioner

exhausted his claim and it is deemed to raise an issue of federal law, he still is not entitled to relief because contrary to petitioner's assertion, the record establishes that the trial judge made an explicit finding, both orally and on the verdict form, that petitioner possessed a firearm during his commission of the robbery.

Petitioner's claim is grounded in his allegation that the finder of fact (the trial judge) did not make a specific finding that he carried a firearm in the course of committing the robbery.  Even assuming to petitioner's benefit that (1) his claim is one that can be recognized under the Due Process Clause and (2) he exhausted his claim by presenting it in his Rule 3.800(a) motions to correct illegal sentence, he is not entitled to federal habeas relief because the state court's factual determination underlying its rejection of petitioner's claim – that the trial judge <u>did</u> make a specific finding that petitioner was in actual possession of a firearm during the robbery – is reasonable and is presumed correct.  (*See* Exs. O, AA (state court's orders denying petitioner's first and second Rule 3.800(a) motions)).  The trial judge's oral findings of fact at the end of the trial reflect clearly that the judge found petitioner was in actual possession of a firearm during the commission of the robbery. (Ex. B, pp. 516- 521).  Specifically with regard to Count One (robbery with a firearm), the judge re- stated at the conclusion of his findings:  "I'm going to find that there was possession of a firearm during the course of the armed robbery."  (Ex. B, p. 521).  In addition,

the verdict form reflects that the judge found petitioner was in actual possession of a firearm during the robbery.  (Ex. A, p. 265).  The state courts' rejection of petitioner's claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Five.

| Ground Six | "Violation of Petitioner's Sixth (6th) Amendment Rights that guarantees the right to effective assistance of counsel; wherein Petitioner's trial counsel was ineffective for failing to adequately investigate the case and prepare for trial." (Doc. 35, p. 18). |

Petitioner alleges the following to support his claim:

Petitioner (Mr. McKinnon) contends that his trial counsel, Charles P. Vaughn (Mr. Vaughn) failed to adequately investigate Petitioner's case and prepare for trial.  Had Mr. Vaughn properly investigated the charges brought against Petitioner from their inception, he would have discovered the formal charging information was invalid on its face; wherein the prosecutor fraudulently used pre-assigned case/exhausted arrest warrant number: 01-2009-CF-001293-A, which was assigned to an individual named Gregory Bernard Epps, to bring criminal charges against Petitioner.  (See attached Attachment-A, 3.850 motion - all).

The following information was available unto Mr. Vaughn inside of available discovery concerning [Petitioners] alleged criminal occurrence on March 24, 2010.

Note: On November 5, 2014 The First District Court of Appeal per curiam affirmed Petitioner's 3.850 Motion; See 1D14-3343.  The above issue at ground six was fully exhausted.  Claim was not cognizable to be raised on direct appeal.

(Doc. 35, p. 18).  Respondent concedes that petitioner exhausted this claim by raising it in his Rule 3.850 proceeding as Ground One.  (Doc. 44, pp. 32-33).  Respondent argues that petitioner is not entitled to habeas relief, because the state courts' rejection of the claim is consistent with clearly established federal law.  (*Id*., pp. 33-39).

A.    Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims.  The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him.  *Id.*, 466 U.S. at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v.*

*Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result.  A reasonable probability is one that sufficiently undermines confidence in the outcome.  *Strickland*, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland*'s high bar is never an

easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d

284 (2010).   "Establishing that a state court's application of *Strickland* was

unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131 S. Ct. at 788.

As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly
> deferential," and when the two apply in tandem, review is "doubly" so.
> The *Strickland* standard is a general one, so the range of reasonable
> applications is substantial. Federal habeas courts must guard against the
> danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d).   When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable. The question
> is whether there is any reasonable argument that counsel satisfied
> *Strickland*'s deferential standard.

*Id.* (citations omitted).

B.     Section 2254 Review of State Courts' Decision

The state courts denied petitioner's claim on the merits.   The state circuit

court's written order, which is the last reasoned decision rejecting petitioner's claim,

began by correctly identifying and explaining the *Strickland* standard as the

governing law.  (Ex. V, p. 183).   The court denied relief on this claim as follows:

> As to ground (A), Defendant alleges that trial counsel was
> ineffective for failing to adequately investigate the case and prepare for
> trial.  Defendant argues that the above-captioned case is the result of a
> conspiracy against him. *See, e.g.,* Trial Transcript at 171 (lines 9-25) -
> 179 (lines 1-15); Letter to Court from Defendant (filed June 10, 2010);
> Letter to court from defendant (filed September 27, 2010); Letters to
> court from Defendant (filed October 6, 2010).   However, the State

> neither "fabricated an arrest warrant against [Defendant]" nor "manufacture[d] a sworn complaint . . . against [Defendant]." Both of these documents are legally sufficient.  *See* Sworn Complaint; Arrest Warrant.  Because they are legally sufficient, counsel did not err by failing to challenge them.  Accordingly, the claim raised is without merit.

(Ex. V, pp. 183-184) (alterations in original).  The First DCA summarily affirmed. (Ex. X).

The state courts concluded, consistent with *Strickland*, that petitioner failed to establish deficient performance or prejudice, because petitioner's proposed basis for challenging the sworn complaint affidavit, arrest warrant and/or charging information lacked merit.  *See* discussion *supra*, Ground One.  The documents contained the correct case number.  Counsel cannot be deemed ineffective for failing to raise a meritless issue.  *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Six.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the second amended petition for writ of habeas corpus (doc. 35), challenging the judgment of conviction and sentence in *State of Florida v. Robert McKinnon, III*, Alachua County Circuit Court Case No. 10-CF-001293, be DENIED, and the clerk be directed to close the file.

2.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 30th day of March, 2016.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.   A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th CIR. R. 3-1; 28 U.S.C. § 636.